**AMERICAN MEDICAL SYSTEMS, INC. and Laserscope, Plaintiffs**

v.

**BIOLITEC, INC., Defendant.**

**C.A. No. 07–30109–MAP.**

United States District Court, D. Massachusetts.

March 20, 2009.

Patrick V. Bradley, Leland G. Hansen, Edward A. Mas, II, Ronald H. Spuhler, McAndrews Held & Malloy, Ltd., Chicago, IL, William H. Bright, Jr., James F. Dedonato, Mark D. Giarratana, Eric E. Grondahl, Richard J. Twilley, McCarter & English, LLP, Hartford, CT, David M. Ianelli, McCarter & English, LLP, Ernest V. Linek, Dale A. Malone, Banner & Witcoff, Ltd., Boston, MA, for Defendant.

Scott P. McBride, Jonathan M. Rushman, McAndrews, Held & Malloy, Ltd., Chicago, IL, for Plaintiffs.

*MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DEFENDANT'S MOTION TO PARTIALLY STRIKE OR, IN THE ALTERNATIVE, TO DISREGARD KENNETH ARNOLD'S DEPOSITION ERRATA SHEET* (Dkt. Nos. 75, 73)

PONSOR, District Judge.

## I. *INTRODUCTION*

Plaintiffs American Medical Systems, Inc. and Laserscope brought suit against Defendant Biolitec, Inc. on June 14, 2007, charging infringement of U.S. Patent No. 6,986,764 ("the '764 patent"). Dkt. No. 1. On July 31, 2008, 569 F.Supp.2d 313, the court issued its Memorandum and Order Regarding Construction of Patent Claims, Dkt. No. 63 ("*Markman* Order"), pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995). Defendant has now moved for summary judgment.

For the reasons stated below, Defendant's Motion for Summary Judgment, Dkt. No. 75, will be allowed. Accordingly, Defendant's Motion to Partially Strike or, in the Alternative, to Disregard Kenneth Arnold's Deposition Errata Sheet, Dkt. No. 73, will be denied as moot.

## II. *BACKGROUND*

This case concerns Defendant's alleged infringement of the '764 patent, which, generally, discloses a "Method and System for Photoselective Vaporization of the Prostate, and Other Tissue."

The invention is useful as a treatment for Benign Prostatic Hyperplasia ("BPH"), a condition in which an enlarged prostate compromises functioning of the bladder and urethra. Vaporization, or ablation, of some of the prostate tissue allows reduction of the prostate to a smaller size.

As described in the patent, treatment of BPH using "photoselective vaporization" generally involves the insertion of a cystoscope into the urethra, provision of a continuous flow of sterile water, and application of laser energy to the target tissue through a laser fiber. The ablation of the prostate tissue occurs holding the laser fiber 1–2 mm away from the tissue. The end point for the procedure is judged by the physician.

This procedure requires that the laser light be highly absorbed in the prostate tissue and negligibly absorbed in the irrigant sterile water. Thus, in the *Markman* Order, the court construed the "photoselective vaporization" claim limitation in the '764 patent to mean:

Using a wavelength that is highly absorptive in the tissue, while being absorbed only to a negligible degree by water or other irrigant.

*Markman* Order, 569 F.Supp.2d at 327.

The '764 patent prefers laser light with a wavelength of 532 nm because it exhibits

these photoselective properties; Plaintiff's device uses such a wavelength of laser light.

The alleged infringing device, Defendant's Evolve laser system, produces laser light at a wavelength of 980 nm and includes a side-firing fiber optic that delivers laser energy through the side of the laser fiber. To treat BPH, the side of the fiber is placed in contact with the target prostate tissue.

The record discloses a number of metrics that may be used to measure the terms "absorptive," "absorbed," and "negligible," as set forth in the *Markman* Order, in reference to 532 nm and 980 nm laser light as applied to prostate tissue and water. The court will not recite the scientific data put forth by the parties in detail but will summarize the relevant undisputed material facts.

First, the absorption coefficient of 980 nm laser light in water is about 0.43 while the absorption coefficient of 532 nm laser light in water is about 0.00036. Prostate tissue is mostly water and it is undisputed that the absorption coefficient of 980 nm laser light in water is at least 14 times greater than that of 532 nm laser light.[1] Second, in prostate tissue, 980 nm laser light is almost equally absorbed in water and hemoglobin. Third, approximately .004% of 532 nm laser energy is absorbed by water irrigant at a distance of 1 mm from prostate tissue while the amount of 980 nm laser light absorbed in the irrigant is over 1,100 times greater. Fourth, qualitatively, slide presentations relied upon by Defendant describe the absorption coefficient of 980 nm light in water as "low." Finally, Defendant's device operates by placing its laser in direct contact with prostate tissue to prevent absorption of 980 nm laser light in the water irrigant, while Plaintiffs' device is held at a distance of approximately 1 mm from the tissue.

## III. DISCUSSION

■ Summary judgment is appropriate if the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court views the evidence in the light most favorable to the non-moving party and the moving party bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In that event, the non-moving party must put forth more than a mere scintilla of evidence or evidence that is merely colorable to survive summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Though the issue of infringement is usually one for the jury, summary judgment may be granted in patent cases. *See C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670 (Fed.Cir.1990).

■ A determination of patent infringement requires that the court, first, construe a patent claim, and, second, compare it to the accused device or process. *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576 (Fed.Cir. 1993).

The court's *Markman* Order constituted the first step of the infringement analysis as it construed a method or apparatus for "photoselective vaporization" of tissue to mean "using a wavelength that is highly

---

1. Defendant contends that the difference is much greater, with the absorption coefficient of 980 nm laser light 1,000 times greater than that of 532 nm laser light. Plaintiffs contend that Defendant did not use the correct units of measurement and the correct amount is 14 times. The court views the facts in the light most favorable to Plaintiffs on summary judgment.

absorptive in tissue, while being absorbed only to a negligible degree by water or other irrigant." *Markman* Order, 569 F.Supp.2d at 327. Thus, the claim construction has two components: (1) high absorptivity in tissue; and (2) negligible absorptivity (at most) in water or other irrigant.

■ This construction is the law of the case. *See Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 372, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) (holding that "the construction of a patent, including terms of art within its claim, is exclusively within the province of the court"); *Ethicon Endo–Surgery v. United States Surgical Corp.,* 149 F.3d 1309, 1315 (Fed.Cir.1998) (applying the law of the case doctrine to prior claim constructions).

■ The second step of the infringement analysis, a determination of whether Defendant's device infringes the patent's claim, is a question of fact. *Id.* at 1315–16. Where the record shows a genuine issue of material fact when comparing a construed claim to the accused device, summary judgment is inappropriate. *L.G. Elecs., Inc. v. Bizcom Elecs., Inc.,* 453 F.3d 1364 (Fed.Cir.2006). Summary judgment is similarly inappropriate when the record shows genuine issues of material fact relating to possible infringement by equivalents. *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298 (Fed. Cir.2003).

Defendant has moved for summary judgment on Plaintiffs' claims for literal infringement and infringement by equivalents. The most significant undisputed material fact is that, regardless of metric, 980 nm laser light is absorbed to more than a negligible degree by water or other irrigant. This fact entitles Defendant to summary judgment.

## A. Literal Infringement

■ Literal patent infringement is shown when every element of the claim is found in the accused device. *Riles v. Shell Exploration & Prod. Co.,* 298 F.3d 1302 (Fed.Cir.2002). It is, of course, undisputed that both Plaintiffs' and Defendant's devices produce laser light that is highly absorbed by prostate tissue. However, as noted, the undisputed facts show that 980 nm laser light is absorbed by water to more than a negligible degree.

Plaintiffs offer potential metrics for measuring the relevant claim construction terms, but even under these methods 980 nm laser light is more than negligibly absorbed by water. As noted, the absorption of 980 nm laser light in water is (by Plaintiffs' own calculation) at least 14 times, and (by Defendant's arithmetic) as much as 1,000 times, greater than that of 532 nm laser light. Thus, physicians using Defendant's device must keep it in contact with the target prostate tissue to avoid absorption in the irrigant and effectively treat BPH.

Plaintiffs attempt to compare the absorption coefficients of 532 nm, 980 nm, and 2100 nm laser light. The prior art used 2100 nm laser light but the relevant comparison is between 532 nm and 980 nm laser light in the infringement analysis. Using this comparison, only .004% of 532 nm laser light is absorbed in water while 4.2% of 980 nm laser light is absorbed. Thus, the percentage of 980 nm laser light absorbed is over 1,100 times greater than 532 nm laser light.

Defendant's device does not violate the "photoselective vaporization" claim limitation in the '764 patent as construed in the *Markman* Order. When compared to 532 nm laser light, 980 nm laser light is more than negligibly absorbed by the water irrigant. Even when viewed in the light most favorable to Plaintiffs, the undisputed facts

show that Defendant's device does not literally infringe the '764 patent.

## B. *Equivalents Infringement*

 Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Ethicon Endo–Surgery*, 149 F.3d at 1315 (citation omitted). A device may infringe by equivalents if "every limitation of the asserted claim, or its equivalent, is found in the accused subject matter, where an equivalent differs from the claimed limitation only insubstantially." *Id.* However, "the doctrine of equivalents is not a license to ignore or erase ... structural and functional limitations of the claim ... on which the public is entitled to rely in avoiding infringement." *Perkin–Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 (Fed.Cir.1987).

 The traditional test for infringement by equivalents is the "function-way-result" test, which asks whether the accused apparatus or method performs substantially the same function, in substantially the same way, to reach substantially the same result as the limitation. *Riles*, 298 F.3d at 1309. This test, however, is not appropriate in this case for two reasons. The essential language of the *Markman* Order is "only to a negligible degree" and to the extent that 980 nm laser light is absorbed by water more than negligibly, it is irrelevant whether Defendant has created a device with the same function, method, and results as Plaintiffs'. As the Supreme Court has noted, this test "often provides a poor framework for analyzing products and processes" that are not mechanical. *Warner–Jenkinson Co., Inc. v.*

*Hilton Davis Chem. Co.*, 520 U.S. 17, 39–40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997).

The Federal Circuit, however, has enunciated three rules for determining whether a device or method infringes by equivalents, which have more purchase in this case: (1) the "all limitations" rule; (2) the "specific exclusion" rule; and (3) the "disclaimer" rule. Applying the first two rules, Defendant has not infringed the '764 patent by equivalents.

### i. *The "All Limitations" Rule*

 The "all limitations" rule requires "that an accused product contain each limitation or its equivalent." *Athletic Alternatives, Inc. v. Prince Manufac., Inc.*, 73 F.3d 1573, 1582 (Fed.Cir.1996). An accused device is not an equivalent, as a matter of law, "if such a finding would entirely vitiate the limitation." *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1358 (Fed.Cir.2005).

 980 nm laser light is more than negligibly absorbed by water or other irrigant. Also, Defendant's device requires application directly to the target prostate tissue. A holding that Defendant's device infringes Plaintiffs' patent under this rule would defy logic and vitiate the "photoselective vaporization" claim limitation in the '764 patent. Under Plaintiffs' interpretation of the *Markman* Order, the '764 patent would then encompass all wavelengths of laser light as long as the laser is applied directly to tissue. In the claim construction order, the court determined that any such expansion of the claims "is undermined by the lack of any explicit language in the patent claims, specification, or prosecution history that would support a belief that the patentee intended the '764 patent to encompass such a technique." *Markman* Order, 569 F.Supp.2d at 323.

Plaintiffs contend that the "all limitations" rule applies primarily in cases

where there is a binary choice between a claim limitation and its potential equivalent, or where the literal language of the construction excludes the potential equivalent. *See Asyst Techs., Inc. v. Emtrak,* 402 F.3d 1188 (Fed.Cir.2005) ("mounted" vs. "unmounted"); *Moore U.S.A. v. Standard Register Co.,* 229 F.3d 1091 (Fed.Cir. 2000) ("majority" vs. "minority"). It argues that the rule does not cover differences in degree and a reasonable jury could conclude that Defendant's device is equivalent to Plaintiffs'.

■ This argument ignores the limiting language of the *Markman* Order. The court construed the patent to include wavelengths absorbed "only to a negligible degree" by the irrigant. Even the metrics advanced by Plaintiffs show that 980 nm laser light is absorbed more than negligibly in water than 532 nm laser light. The binary difference between "only to a negligible degree" and "more than to a negligible degree" is properly the subject of the "all limitations" rule.

At the risk of repetition, it must be emphasized that the court construed the "photoselective vaporization" claim in the '764 patent to cover wavelengths of light that are absorbed "only to a negligible degree" by water or other irrigant. 980 nm laser light is absorbed by water to a more than negligible degree. Thus, Defendant's device does not infringe the '764 patent by equivalents under the "all limitations" rule.

ii. *The "Specific Exclusion" Rule*

■ The "specific exclusion" rule provides that "equivalency cannot embrace a structure that is specifically excluded from the scope of the claims." *Athletic Alternatives,* 73 F.3d at 1582 (quotation omitted).

■ The court's analysis here is substantially similar to that concerning the "all limitations" rule. Since 980 nm laser light is absorbed to more than a negligible degree by water, Defendant's device is,

logically, not included in the ambit of what is claimed by the '764 patent.

Plaintiffs contend that this approach would preclude infringement by equivalents in all instances because the rule necessarily deals with subject matter outside the literal scope of the claim, and that the doctrine is not "foreclosed whenever a claim limitation does not literally read on an element of the accused device." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 469 F.3d 1005, 1018 (Fed.Cir.2006).

Again, Plaintiffs are attempting to ignore the specificity of the *Markman* Order. The key word in the order is "only" and to the extent that, when comparing 532 nm laser light and 980 nm laser light, the latter is absorbed by water to more than a negligible degree, Defendant has not infringed the '764 patent by equivalents under the "specific exclusion" rule.

iii. *The "Disclaimer" Rule*

■ Finally, the "disclaimer" rule precludes a finding of infringement where a patent recognizes and disclaims the structures used by the accused device or method. *See, e.g., SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,* 242 F.3d 1337 (Fed.Cir.2001); *Honeywell Int'l v. ITT Indus., Inc.,* 452 F.3d 1312 (Fed. Cir.2006).

■ The court has stated that, while the patent's references to the inadequacies of prior art laser wavelengths "are not perhaps so explicitly critical as to constitute binding disavowal of non-photoselective wavelengths on their own ... they indicate that the patentees were focused on building upon the then-best practice of using photoselective wavelengths and were aware of the disadvantages of other wavelengths." *Markman* Order, 569 F.Supp.2d at 321.

The court's assessment of the specificity of any possible disclaimer has not changed.

Thus, the disclaimer rule is an inappropriate method to determine whether Defendant has infringed the '764 patent by equivalents.

## IV. CONCLUSION

In the *Markman* Order, the court noted that its "construction of the patent claims ... particularly the interpretation of the term 'photoselective vaporization,' may be fatal to Plaintiffs' infringement claims and that the next phase of this litigation may be before the Federal Circuit." *Id.* at 327.

Put simply, this prediction has come to pass. Under the court's construction of this term, the 532 nm laser light specified in the '764 patent is absorbed to only a negligible degree by water or other irrigant. The undisputed facts show that, regardless of the metric used, 980 nm laser light is absorbed to a more than negligible degree by water or other irrigant. No reasonable jury could find otherwise, and Defendant is entitled to summary judgment, as a matter of law, on Plaintiffs' claims for literal infringement and infringement by equivalents.

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. No. 75) is hereby ALLOWED. Accordingly, Defendant's Motion to Partially Strike or, in the Alternative, to Disregard Kenneth Arnold's Deposition Errata Sheet (Dkt. No. 73) is DENIED, as moot. The clerk will enter judgment for Defendant. The case may now be closed.

It is So Ordered.